# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JONATHAN MICHAEL RUIZ** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-5801** |
| **JAMES LEBLANC, ET AL.** | **SECTION "R"(3)** |

## REPORT AND RECOMMENDATION

Plaintiff, Jonathan Michael Ruiz, a state inmate, filed this civil action pursuant to 42 U.S.C. § 1983. He sued James LeBlanc, Robert Tanner, Damon Breland, and Carol Jordan. In his complaint, plaintiff claimed that his rights were violated when he was restricted from and disciplined for possessing certain magazines.

On November 15, 2013, the undersigned United States Magistrate Judge issued a report recommending that plaintiff's federal civil rights claims be dismissed with prejudice as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief and that his state law claims be dismissed without prejudice.[1] Plaintiff objected[2] and filed motion for leave to file an amended complaint.[3] While expressing skepticism that plaintiff could in fact cure the defects which existed in his original complaint, the United States District Judge granted the motion, dismissed plaintiff's claims in the original complaint without prejudice, and ordered that plaintiff would be given one, *and only one*,

---

[1] Rec. Doc. 4.

[2] Rec. Doc. 5.

[3] Rec. Doc. 6.

attempt to file an amended complaint alleging his "best case."[4] Plaintiff thereafter filed his amended

complaint.[5]  For the following reasons, the undersigned finds that plaintiff's "best case" as alleged

in the amended complaint still is not sufficient to withstand the screening process mandated by

federal law.

## I.  Standards of Review

Federal law requires that federal courts "review, before docketing, if feasible or, in any event,

as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress

from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).

Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any
> portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief
> > may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit,

federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the court determines that ... the action or
> appeal –
>
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or

---

[4]   Rec. Doc. 7.

[5]   Rec. Doc. 8.

> (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

3

Although broadly construing plaintiff's amended complaint,[6] the undersigned recommends that, for the following reasons, plaintiff's claims be dismissed as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

## II.  Plaintiff's Claims

In support of his amended complaint, plaintiff makes the following factual allegations.  In 2006, he pleaded guilty to possession of pornography involving juveniles.  Over the course of his resulting incarceration, he subscribed to a wide variety of magazines.  However, in 2011, he was informed that he would not be allowed to subscribe to Seventeen magazine because it was deemed "inappropriate" for him.  Although he believed that restriction was "unlawful," he decided not to challenge it in light of the fact that his numerous other magazine subscriptions were unaffected.

In 2012, plaintiff was charged with a disciplinary infraction for possessing two other magazines, Parenting and Family Fun.  The disciplinary charge alleged that plaintiff knew or should have known he was not allowed to possess such magazines in light of the fact that he was prohibited from subscribing to Seventeen magazine.  At the disciplinary hearing, he was convicted and punished by being placed in disciplinary segregation and having to dispose of prohibited items.  However, on appeal, the Warden ordered that plaintiff's case be reheard because he had not been given adequate time to prepare his defense.

---

[6]    The court must liberally construe a *pro se* civil rights complaint.  See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

Eventually, a new disciplinary hearing was held before defendants Damon Breland and Carol Jordan, and plaintiff was again convicted of a disciplinary infraction.  He again appealed, and, this time, Warden Robert Tanner, who is also a defendant herein, sustained the disciplinary conviction. Plaintiff then appealed that decision as well, and he was likewise denied relief in a decision rendered on behalf of defendant James LeBlanc, the Secretary of the Louisiana Department of Public Safety and Corrections.   Plaintiff thereafter filed a petition for judicial review of that decision in the Louisiana Nineteenth Judicial District Court; however, on June 10, 2013, that matter was dismissed without prejudice at his request.  In the interim, he had been released from disciplinary segregation in March of 2013.

Before turning to plaintiff's specific claims, the Court must make one preliminary observation.  Plaintiff has sued the defendants in both their official and individual capacities. However, it is clear that plaintiff may not seek damages against the defendants in their official capacities because they are all state officials or employees.  Specifically, James LeBlanc is the Secretary of the Louisiana Department of Public Safety and Corrections ("LDPSC"), while the remaining defendants are all employed at the B.B. "Sixty" Rayburn Correctional Center, a state prison operated by the LDPSC.  State officials and employees sued in their official capacities for monetary damages simply are not considered "persons" subject to suit under 42 U.S.C. § 1983.  Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989); Stotter v. University of Texas, 508 F.3d 812, 821 (5th Cir. 2007); American Civil Liberties Union v. Blanco, 523 F. Supp. 2d 476, 479 (E.D. La. 2007); Tyson v. Reed, Civ. Action No. 09-7619, 2010 WL 360362, at *4 (E.D. La. Jan. 21, 2010); Searls v. Louisiana, Civ. Action No. 08-4050, 2009 WL 653043, at *6 (E.D. La. Jan. 21,

2009); <u>Demouchet v. Rayburn Correctional Center</u>, Civ. Action No. 07-1694, 2008 WL 2018294, at *3 (E.D. La. May 8, 2008).  Additionally, because a claim against a state official or employee in his or her official capacity for monetary damages is actually a claim against the state itself, such claims are barred by the Eleventh Amendment.  <u>Williams v. Thomas</u>, 169 Fed. App'x 285, 286 (5th Cir. 2006); <u>Tyson</u>, 2010 WL 360362, at *4; <u>Searls</u>, 2009 WL 653043, at *6; <u>Demouchet</u>, 2008 WL 2018294, at *3.

In any event, even disregarding that defect, the Court notes that plaintiff is not entitled to relief because his underlying claims are frivolous and/or fail to state a claim on which relief may be granted for the following reasons.

It appears that plaintiff is claiming that, in many respects, the defendants have not abided by departmental and prison rules and regulations.  The Court can quickly dispose of that contention. "[A] prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation."  <u>Samford v. Dretke</u>, 562 F.3d 674, 681 (5th Cir. 2009); <u>see also</u> <u>Stanley v. Foster</u>, 464 F.3d 565, 569 (5th Cir. 2006); <u>Sandoval v. Fox</u>, 135 Fed. App'x 691, 691-92 (5th Cir. 2005); <u>Castillo v. Blanco</u>, Civ. Action No. 07-215, 2007 WL 2264285, at *9 (E.D. La. Aug. 1, 2007).  Further, to the extent that plaintiff is contending that the defendants' actions were in and of themselves unconstitutional under the First and Fourteenth Amendments, those claims fare no better for the following reasons.

To the extent that plaintiff is alleging that the prison's policy prohibiting him from possessing magazines such as <u>Seventeen</u>, <u>Parenting</u>, and <u>Family Fun</u> violated his rights under the First Amendment, the undersigned finds that claim has no merit.  It is true that prisoners do not lose all

6

constitutional rights once they pass beyond prison walls; however, they retain only those First Amendment rights which are not inconsistent with their status as prisoners or with the legitimate penological objectives of the prison system. See Turner v. Safley, 482 U.S. 78, 84 (1987); Hudson v. Palmer, 468 U.S. 517, 523 (1984).  Moreover, because courts are "ill equipped to deal with the difficult and delicate problems of prison management," the United States Supreme Court has "afforded considerable deference to the determinations of prison administrators."  Thornburgh v. Abbott, 490 U.S. 401, 407-08 (1988) (citation marks omitted).  That deference applies when prison officials restrict activities that present "potentially significant implications for the order and security of the prison," even if those same activities might seem "innocuous to laymen."  Id. at 407.  As a result, the Supreme Court has rejected a "heightened" scrutiny standard for regulations that are "centrally concerned with the maintenance of order and security within prisons" and instead applies a reasonableness standard.  Id. at 409-10.  Therefore, a prison regulation is valid so long as "it is reasonably related to legitimate penological interests."  Turner, 482 U.S. at 89.

        In Turner, the Supreme Court set out four factors to consider in determining whether this reasonableness standard is met: (1) whether there is a rational relationship between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether the inmate has an available alternative means of exercising the rights; (3) the impact of accommodation on other inmates, guards, and allocation of prison resources; and (4) the presence or absence of easy and obvious alternative means to accommodate the right.  Turner, 482 U.S. at 89-91; see also Prison Legal News v. Livingston, 683 F.3d 201, 214 (5th Cir. 2012).  "Rationality is the controlling factor,

and the remaining factors are best understood as indicators of rationality." <u>Prison Legal News</u>, 683 F.3d at 214-15 (citation and quotation marks omitted).

Here, as plaintiff candidly acknowledges, he was denied access to <u>Seventeen</u>, <u>Parenting</u>, and <u>Family Fun</u> magazines due to the fact that he is currently incarcerated for possession of pornography involving juveniles. Clearly, states have a legitimate interest in rehabilitating sex offenders. <u>See, e.g.</u>, <u>McKune v. Lile</u>, 536 U.S. 24, 32-33 (2002). While it is true that <u>Seventeen</u>, <u>Parenting</u>, and <u>Family Fun</u> magazines are not pornographic, they undeniably are aimed at or involve children. Prohibiting an inmate who is sexually aroused by photographs of children from possessing magazines aimed at or involving children is obviously rationally related to the legitimate interest of rehabilitating him, in that it takes no great effort to conclude that such materials could well undermine his rehabilitation and ability to control the very sexual urges which led to his crime. <u>See Matthews v. Ambridge</u>, No. 2:12-CV-01004, 2013 WL 3943638, at *6 (D. Nev. July 30, 2013). Moreover, the restriction on plaintiff's access to magazines was narrowly tailored to achieve that legitimate interest. As plaintiff acknowledges in his complaint, he was not subjected to a total ban on receiving reading materials, in that he was allowed to subscribe to and receive a wide variety of *other* magazines;[7] only the magazines aimed at or involving children were prohibited.[8] Also, no

---

[7]     Rec. Doc. 8, p. 12.

[8]     Of course, after plaintiff was placed on extended lockdown, he was then subject to the Rayburn Correctional Center's general policy restricting access to publications by all inmates on extended lockdown for disciplinary violations. That general policy clearly is not unconstitutional. <u>See, e.g.</u>, <u>Tyson v. LeBlanc</u>, Civ. Action No. 10-1174, 2010 WL 5375955, at *10-14 (E.D. La. Nov. 19, 2010), <u>adopted</u>, 2010 WL 5376330 (E.D. La. Dec. 15, 2010), <u>aff'd</u>, 431 Fed. App'x 371 (5th Cir. 2011); <u>see also Ruiz v. LeBlanc</u>, Civ. Action No. 13-6373 (E.D. La. May 5, 2014).

accommodation can be easily achieved in this case.  As already noted, allowing plaintiff to possess such magazines would impair the prison's efforts to rehabilitate him. An obvious consequence of permitting inmates the freedom to engage in activities counterproductive to the prison's rehabilitation efforts is that the prison would then have to modify their current rehabilitative efforts, if possible, to counteract the negative effects caused by those activities, resulting in additional costs and labor.  Finally, while prison officials could presumably censor each issue to remove the problematic pictures and articles, that would be a costly, time-consuming, and burdensome task unjustified in light of the minimal benefit that would accrue to plaintiff.  Under these circumstances, the undersigned has no hesitation in concluding that the reasonableness standard is met and that plaintiff's First Amendment challenge therefore fails.

To the extent that plaintiff is claiming that his disciplinary conviction and resulting punishment for possessing the magazines violated his right to due process under the Fourteenth Amendment, that claim is foreclosed by Sandin v. Conner, 515 U.S. 472 (1995).  In Sandin, the United States Supreme Court held:

> [W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. at 483-84 (citations omitted).

The United States Fifth Circuit Court of Appeals has held: "In the wake of Sandin, ... 'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'"  Pichardo v. Kinker, 73 F.3d 612, 613 (5th Cir. 1996)

(quoting Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995)).  The Fifth Circuit has further noted that after Sandin "it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the *duration* of confinement, will henceforth qualify for constitutional 'liberty' status" entitled to procedural due process protections.  Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995) (emphasis added).  Stated differently, the Fifth Circuit has observed that the liberty interests protected by the Due Process Clause are "generally limited to state created regulations or statutes which affect the *quantity of time* rather than the *quality of time* served by a prisoner."  Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) (emphasis added).

Plaintiff tries to avoid this line of jurisprudence by arguing that the conditions of confinement in disciplinary segregation at the Rayburn Correctional Center were so unduly restrictive and harsh that they did in fact impose an atypical and significant hardship on him in relation to the ordinary incidents of prison life.  Clearly, plaintiff is attempting to fall within the parameters of the United States Supreme Court's decision in Wilkinson v. Austin, 545 U.S. 209 (2005).  In Wilkinson, the Supreme Court held that solitary confinement in a "Supermax" facility imposes an atypical and significant hardship that creates a liberty interest in avoiding such a placement when all of the following factors are taken together:  almost all human contact, including cell to cell conversation, is prohibited; the light is on for 24 hours per day; exercise is for one hour per day, but only in a small indoor room; the placement is indefinite and is reviewed just annually; *and* placement disqualifies an otherwise eligible inmate from parole consideration.  Wilkinson, 545 U.S. at 223-24.  However, the conditions plaintiff describes in the amended complaint do not even begin to rise to the level of the conditions described in Wilkinson.

Rather, plaintiff's argument is premised primarily on the grave differences in the quality of life on the general population tiers as contrasted to the quality of life on the disciplinary segregation tiers.  Plaintiff alleges, and the undersigned accepts as true, that life on the disciplinary segregation tiers is much harsher and restrictive. That, however, *was the very point*, and it is clear such harshness in and of itself does not render the conditions unconstitutional.  On the contrary, it is beyond cavil that prison officials are allowed to impose unfavorable conditions of confinement on those who have been found guilty of violating prison rules in order to maintain discipline and deter future misconduct.  See Daigre v. Maggio, 719 F.2d 1310, 1312 (5th Cir. 1983) ("We recognize that isolation is punitive, that prisoners so confined have demonstrated their defiance of prison rules, and that deprivations beyond those imposed on the general prison population is the very essence of internal prison discipline.").  While a prison official's discretion in such matters is, of course, not unfettered, a degree of deference must be accorded to the manner in which that discretion is exercised.  See Bell v. Wolfish, 441 U.S. 520, 547 (1979) ("[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions.  Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."); Royal v. Clark, 447 F.2d 501, 501-02 (5th Cir. 1971) ("Federal Courts will not interfere in the administration of prisons absent an abuse of the wide discretion allowed prison officials in maintaining order and discipline." (citations omitted)).  Therefore, an inmate's rights are violated only if the conditions imposed for disciplinary infractions were so harsh or restrictive as to independently be unconstitutional.  In a separate lawsuit filed in

11

this Court, plaintiff has already challenged the conditions on the disciplinary segregation tier by arguing that the conditions were so extreme that they constituted "cruel and unusual" punishment in violation of the Eighth Amendment.  That claim, however, was emphatically rejected.  Ruiz v. LeBlanc, Civ. Action No. 13-6373 (E.D. La. May 5, 2014).  Nothing plaintiff alleges herein dictates a different result.

Because the conditions of plaintiff's confinement in disciplinary segregation did not rise to the level of the "Supermax" conditions which existed in Wilkinson, and because his disciplinary conviction affected only the "quality," not the "quantity," of the time he must serve, Sandin clearly bars plaintiff's claim due process claim challenging his disciplinary conviction and resulting punishment.[9]

Lastly, to the extent that plaintiff is attempting to assert claims under state law, the Court should decline to consider any such claims.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction ...."); see also Jackson v. Mizzel, 361 Fed. App'x 622, 627 (5th Cir. 2010) ("Because [the plaintiff] states not one valid federal claim, the district court properly declined jurisdiction over his Louisiana causes of action."); Bass v. Parkwood Hospital, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the

---

[9]   Out of an abundance of caution, the Court notes that this conclusion is not changed by plaintiff's allegation that he will be ineligible for work release as a collateral consequence of his disciplinary confinement.  See Rec. Doc. 8, p. 28.  Because work release is a discretionary benefit, due process is not required when that benefit is withheld.  James v. Hertzog, 415 Fed. App'x 530, 532 (5th Cir. 2011); Welch v. Thompson, 20 F.3d 636 (5th Cir. 1994); Parks v. Iberia Work Release, Civil Action No. 6:13-cv-2748, 2013 WL 6903903, at *2-3 (W.D. La. Dec. 30, 2013); Mayfield v. Keith, No. 13-CV-1134, 2013 WL 7868448 (W.D. La. Oct. 16, 2013), adopted, 2014 WL 897413 (W.D. La. Mar. 6, 2014).

general rule is to dismiss any pendent claims."). If plaintiff wishes to pursue claims under state law, he should do so in the state courts.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's federal civil rights claims be **DISMISSED WITH PREJUDICE** as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

It is **FURTHER RECOMMENDED** that plaintiff's state law claims be **DISMISSED WITHOUT PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[10]

New Orleans, Louisiana, this sixteenth day of June, 2014.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[10]    Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.